# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TALLY A. ROWAN,

        Plaintiff,

v.                                                               Case No. 10-CV-77

MARY LEMMENES,

        Defendant.

## ORDER

The plaintiff, Tally A. Rowan, a Wisconsin state prisoner, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. She is proceeding *in forma pauperis* on Eighth Amendment deliberate indifference to a serious medical need and retaliation claims. The defendant has filed a motion for summary judgment, which will be addressed herein.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## FACTUAL BACKGROUND[1]

The plaintiff, who is incarcerated at Taycheedah Correctional Institution (TCI), commenced this lawsuit against Mary Lemmenes, a nurse practitioner at TCI. The plaintiff claims that the defendant was deliberately indifferent to her serious medical

---

[1] This section is taken from the defendant's proposed findings of fact. The plaintiff failed to refute the evidence presented in support of the defendant's motion for summary judgment and to respond to the factual record provided by the defendant. The defendant's facts are, therefore, undisputed in this case. *See* Civil L.R. 56(b)(4) (E.D. Wis.); *see also Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630-31 (7th Cir. 2010).

The plaintiff submitted an affidavit in support of her response to the defendant's motion, which sets forth detailed descriptions of her medical issues at TCI, along with her disagreement with some of the medical treatment she received there. Specifically, the affidavit describes verbal abuse from defendant Lemmenes (at 2-5); digestion issues (at 6-7); MRSA (at 7-10); hives (at 10-11); foot and ankle issues (at 11-13); diet and allergy issues (13-16); dental concerns (14); and rude and negligent treatment from defendant Lemmenes (17-18). The plaintiff's affidavit, however, does not dispute the defendant's proposed findings of fact, which for the most part simply detail the treatment the plaintiff received at TCI, based on her medical records.

needs when she: 1) gave the plaintiff alternative medications instead of the ones she was prescribed when arriving at TCI; 2) discontinued other medications and refused her Tylenol for pain; 3) denied the plaintiff a special diet; 4) denied her a lower tier restriction; 5) retaliated against the plaintiff by taking away her Ultram and Celebrex after she complained about not getting a lower tier restriction; and 6) denied the plaintiff medical disbursement for Dial anti-bacterial soap allegedly causing her to contract Methicillin Resistant Staphylococcus Aureus infection (MRSA).

The defendant has been a registered nurse since 1993, a nurse practitioner since May 2007, and has been employed at TCI as a nurse practitioner since March 2008. Her duties include the assessment and treatment of inmates throughout the institution under the professional direction of the unit physician.

On September 28, 2009, the plaintiff arrived at TCI as a new intake and was evaluated by Nurse Tara Vandekolk. The plaintiff reported a history of borderline diabetes without monitoring of blood sugars at home. She denied any history of asthma, seizure disorder, cardiac disease, hypertension, Hepatitis C, HIV, or history of MRSA. It was noted that the plaintiff was taking a number of medications that were not on the Wisconsin Department of Corrections' (DOC) Formulary or authorized list of medications that could be prescribed by providers.

On October 1, 2009, Nurse Ashley Carmody saw the plaintiff for multiple issues including requesting brand name medications and requesting a lower bunk and lower tier due to pain related to prior orthopedic problems. Nurse Carmody

observed the plaintiff walking into the exam room with a rapid pace and an even, steady gait and sit straight in a chair at the edge with her feet flat on the floor. The plan was to address the plaintiff's requests with the defendant at her physical examination.

On October 2, 2009, the defendant saw the plaintiff for her physical examination. The medical issues reported and plan of care were as follows:

> Borderline diabetes per self reported history- Intake labs reveal normal fasting glucose. Plan: Therapeutic lifestyle changes discussed reinforcing weight loss. No special diet indicated.
>
> Irritable bowel syndrome- Plan: Metamucil as needed.
>
> History per Rowan's report of multiple orthopedic problems including 2 torn ligaments to right foot from a motor vehicle accident in 2001 and a right foot injury at age 14, as well as history of fractured left ankle. Examination revealed no gait disturbance. Range of motion was intact to extremities. No swelling redness or crepitus to extremities. Positions self in lithotomy position without difficulty. No grimacing or guarding of movement. Plan: Attempt to get medical records regarding orthopedic issues (already requested by intake nurse). Celebrex and Ultram stopped as these are not authorized medications within the Department of Corrections and her physical examination did not indicate that these medications were necessary. Lemmenes ordered for Rowan's blood to be drawn to test for NSAIDS (anti-inflammatory medications) allergies. Lower bunk was ordered for Rowan, but not a lower tier as this was not medically indicated.
>
> Gastroesophageal Reflux Disorder (GERD)- Tums. Stop Prevacid. Start Omeprazole.
>
> Fibromyalgia- Get records.
>
> Triglycerides 236, Total cholesterol 177- Plan – Continue fish oil, weight loss, and therapeutic lifestyle changes. No special diet indicated.

> Sleep apnea- Presents with own Continuous Positive Airway Pressure (CPAP) machine which needs new parts. Plan: Order for nursing to evaluate machine and order parts as appropriate.

(Lemmenes Aff. ¶ 10, Ex. A at 4-5.) During the physical examination, the plaintiff did not express an immediate need for pain medication nor did she present physical symptoms of needing pain medication.

On October 6, 2009, the plaintiff was seen by Nurse Carmody per complaints of a dry and reddened face. The plaintiff was encouraged to push fluids to prevent drying out and advised on dry skin care tips and products available at the canteen such as lotions, alternative soaps, Vaseline, and nasal spray. She was provided a tube of hydrocortisone cream and verbalized understanding of the treatment plan.

On October 9, 2009, Dr. Joseph saw the plaintiff to evaluate her complaints of a rash and swelling of her lips, which were reportedly related to using a wool blanket. The plaintiff reported her condition had improved with Benadryl. The physical examination showed no swelling of lips and that the rash was resolving. The plan was to keep the plaintiff on Benadryl as needed for three days and to have her stop using a wool blanket.

On October 13, 2009, the plaintiff was seen by Assistant Health Services Unit (HSU) Manager Tracy Thompson regarding complaints of her plan of care for chronic pain. Thompson spoke with Dr. Meress regarding the plaintiff's plan of care. Dr. Meress ordered lab work including sedimentation rate, antinuclear antibodies (test to look for connective tissue diseases), rheumatoid factor, anemia panel, Lyme western blot, uric acid, and Vitamin D level. Thompson discussed with the plaintiff

that, because she was a new DOC patient, it was important for her to be fully assessed and evaluated prior to developing an appropriate treatment plan. Chronic pain management options were discussed, including a pain medication called Gabapentin, which the plaintiff did not want to take. On October 19, 2009, the plaintiff's lab work was drawn as ordered. All findings were within normal limits except Vitamin D level, which was sub-therapeutic. Therefore, Dr. Meress started a Vitamin D supplement.

On October 29, 2009, Nurse Nicole Merrick saw the plaintiff per complaints of constipation. The plaintiff was encouraged to push fluids, exercise, and was to take Docusate Sodium until seen by the physician. On November 5, 2009, the plaintiff was seen by Dr. Meress for constipation. A stomach X-ray was ordered, with no acute findings noted. The plaintiff's Loratadine was stopped as this may have contributed to the constipation and she was started on B12 complex and Folate. Dr. Meress ordered lab work, including celiac panel and thyroid function studies.

On November 15, 2009, the plaintiff was seen by Nurse Michelle Peters for complaints of hives. The plaintiff was provided with hydrocortisone cream and Benadryl per protocol. On November 16, 2009, the plaintiff was seen for follow-up for hives, and Loratadine was reordered.

On November 19, 2009, the defendant saw the plaintiff for a persistent reoccurring rash. The plaintiff admitted to not taking her Loratadine regularly and that when she did, the rash disappeared. The plaintiff requested a referral for an allergy work-up. She also complained of generalized knee pain and wanted Ultram

for this. The plaintiff agreed to try Tylenol Extra strength for her knee pain and the defendant told her she would consider a physical therapy referral if not effective. The plaintiff was encouraged to continue weight loss and exercise efforts. The defendant gave her positive reinforcement for her recent nine pound weight loss. The defendant changed her Loratadine to Cetirizine for the rash and encouraged her to take the medication daily to prevent rash symptoms. She also advised the plaintiff that an allergy work-up was not medically necessary as she admitted herself that when she takes her medication consistently, the rash clears.

On December 3, 2009, the plaintiff was seen by Nurse Shelly Kamps for multiple complaints including infections due to lack of Dial soap, allergy pills making her sleepy, and requesting Lactaid pills. The plaintiff was given Betasept wash and was scheduled to be seen for follow-up.

On December 7, 2009, Nurse Kim Schmidt saw the plaintiff for a possible eye infection. The plaintiff was advised to apply warm compresses and to follow up if there was no improvement. On December 9, 2009, the defendant saw the plaintiff for complaints of a stye in her left eye. Nurse Lemmenes prescribed and dispensed antibiotic eye drops. She also prescribed Benadryl as needed for seven days. Lab work, including a thyroid level (TSH) and fasting glucose, was ordered. On December 11, 2009, the plaintiff's glucose and TSH lab results were received and were within normal limits.

On December 10, 2009, the defendant saw the plaintiff for complaints of rectal bleeding. The defendant stopped Metamucil and ordered Senna (a stronger

medication for constipation) and also ordered 3 Fecal Occult Blood Tests to be done. On January 5, 2010, the Fecal Occult Blood Tests results were negative.

On December 14, 2009, the plaintiff was seen by Nurse Practitioner Ann Gerou for complaints of a vaginal infection. The examination was normal. However, a vaginal wet prep culture was obtained. On December 15, 2009, the results of the vaginal wet prep culture were received and were negative.

On December 18, 2009, Nurse Kim Schmidt saw the plaintiff for complaints of a lesion to her right upper arm and her right gluteal fold. A culture was obtained. MRSA standing orders were initiated to include antibiotic treatment, dressing changes, and a single cell with provider follow-up pending. The purpose of isolation is to promote healing and decrease any potential spread of infection. When an inmate is isolated for this reason, the Infection Control: Patient and Employee Precautions written protocol is followed. On December 22, 2009, the culture results of the plaintiff's lesions indicated a staph infection, but not MRSA.

The defendant saw the plaintiff on December 18, 2009, as well. The plaintiff presented multiple concerns, including continued hives, which were exacerbated by state-issued soap and felt this contributed to her skin infection. She complained of daytime sleepiness from the Cetirizine she was taking for her hives and, therefore, administration time of Cetirizine was changed to bedtime. The plaintiff was advised that allergy testing was not medically indicated as Cetirizine was effective when taken consistently. She was provided Dial soap and lotion due to multiple skin issues. The plaintiff requested ankle and knee surgery that were scheduled prior to

incarceration, but her medical records, including from outside clinics, stated that she was not a good surgical candidate. The plaintiff stated she saw a different doctor following the recommendation that she was not a good surgical candidate. The plan was to attempt to get the plaintiff's additional medical records related to orthopedic issues and then to discuss plan of care.

On January 7, 2010, the plaintiff was seen by Nurse Kamps for complaints of rash and increased itching. The plaintiff admitted missing doses of Cetirizine prior to onset of the rash. Benadryl was given per protocol.

On January 15, 2010, the plaintiff refused to see the defendant for follow-up for orthopedic complaints. The defendant ordered a physical therapy visit to be scheduled to evaluate the plaintiff's right ankle pain in order to determine if a low tier restriction was medically indicated. Since the plaintiff refused to see her, the defendant ordered for her to be seen by another provider.

On January 21, 2010, the plaintiff was seen by Dr. Joseph to discuss multiple issues including a request to see a knee specialist, have a bladder test, surgery for her toes, and having to continue to climb stairs. Dr. Joseph had reviewed additional medical records from previous providers at this time and did not find anything to substantiate a need for surgery.

On February 17, 2010, Dr. Joseph saw the plaintiff after she requested testing for diabetes and to evaluate a sore to her groin. The plan was to check fasting glucose and Hgb. A1C and to initiate MRSA protocol to include Minocycline

treatment. On March 17, 2010, the plaintiff's lab results of TSH, CBC, and Hgb. A1C (diabetes) were obtained and the results were all within normal limits.

On March 29, 2010, the defendant noted that the plaintiff refused Omeprazole. Nurse Lemmenes ordered another appointment scheduled to discuss the worsening Gastroesophageal Reflux Disorder (GERD) and refusal of Omeprazole. On April 2, 2010, the plaintiff refused to see the defendant for GERD and also refused Omeprazole. The defendant ordered for the plaintiff to be seen by another provider.

On April 7, 2010, Dr. Joseph saw the plaintiff for GERD. She reported that the Omeprazole was making her GERD worse, and also complained of a boil on her left groin. The plaintiff was diagnosed with Folliculitis and started on Minocycline. Dr. Joseph submitted a request for Prevacid for the plaintiff's GERD. On April 9, 2010, Dr. Joseph discontinued the plaintiff's Prevacid and started her on Pantoprazole for GERD. On April 9, 2010, the defendant changed the plaintiff's Pantoprazole to be administered at bedtime per the plaintiff's request. Cetirizine was discontinued per the plaintiff's request and Loratadine was re-started for her allergies.

On May 3, 2010, MRSA precautions were initiated for the plaintiff due to a lesion on her left thigh. A culture was obtained and Minocycline was initiated. On May 5, 2010, Rowan's wound culture came back negative.

## ANALYSIS

The defendant contends that the plaintiff cannot maintain a claim for deliberate indifference because the defendant evaluated each of the plaintiff's medical complaints and applied her medical judgment in treating them. She argues that the

plaintiff cannot meet the deliberate indifference prong of an Eighth Amendment claim, and that the record does not support a retaliation claim.

The plaintiff contends that, as a nurse practitioner, the defendant was responsible for her health care at TCI, and that the defendant deliberately caused her pain and suffering because she put her personal opinion above doctors' opinions. According to the plaintiff, the defendant admits failing to provide her adequate hygiene prior to receiving MRSA in December of 2009, discontinuing medications, only providing soap after the fact, and refusing to address the plaintiff's staph infections, reflux, and constipation issues in a helpful manner.

A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind. *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A deliberate indifference claim based on inadequate medical treatment requires, to satisfy the objective element, a medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards*, 478 F.3d at 830-31 (quoting *Greeno*, 414 F.3d at 653). The subjective component of a deliberate indifference claim requires that the prison official knew of "a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653 (citing *Farmer*, 511 U.S. at 834). Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference. *Edwards*, 478 F.3d at 831 (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976));

*Greeno*, 414 F.3d at 653; *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996). Yet, a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition. *Edwards*, 478 F.3d at 831 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir.1996)).

For the purposes of summary judgment, the defendant stipulates that the plaintiff's multiple stated health care needs constitute a serious medical need under the Eighth Amendment. Thus, the court will focus on whether the undisputed facts support a finding that the defendant was deliberately indifferent to the plaintiff's medical conditions.

The undisputed facts reflect that between arriving at TCI in September 2009, and May 2010, or about eight months, the plaintiff had twenty-two visits to the HSU. Five of the visits were with the defendant. Two visits scheduled with the defendant were rescheduled with other practitioners after the plaintiff refused to be seen by the defendant. At each visit with the defendant, the record documents that the plaintiff's complaints were assessed and a plan of care initiated. The record discloses that the defendant conducted a series of thorough examinations, laboratory and other diagnostic tests as part of her treatment of the plaintiff's complaints, and each time made a considered judgment in developing a plan of care for her reported symptoms.

Specifically, the undisputed facts disclose that the plaintiff's complaints about chronic pain were taken seriously, evaluated, and reasonably treated, and that this included a pain medication regimen, although not the regimen the plaintiff requested. Next, with regard to the plaintiff's claims about her skin care and treatment for alleged MRSA, as an initial matter, the defendant was not her primary care provider throughout most of the treatment. Although the plaintiff was never diagnosed with a MRSA infection, her symptoms were taken seriously when reported to TCI medical personnel. The medical records demonstrate that the TCI health care staff had a protocol in place for evaluating and treating suspected or confirmed MRSA infections, and that the protocol was implemented when considered medically appropriate for the plaintiff. Additionally, the plaintiff was provided with medical treatment for each skin condition as it arose. She was provided alternative soaps, including Betasept and Dial anti-bacterial soap for her various skin problems. Finally, with regard to the plaintiff's claim of denial of a special diet, the record discloses that the plaintiff self-reported a history of diabetes but, at her initial physical examination, the defendant assessed her history and potential risk before deciding that a special diet was not necessary. The defendant evaluated the plaintiff's triglyceride and cholesterol levels. She recommended lifestyle changes and ordered fish oil supplements for the plaintiff.

The overwhelming factual record demonstrates that each time the defendant saw the plaintiff she took her concerns seriously, assessed the situation, and developed a plan of care. It is undisputed that the plaintiff disagreed with some of

the medical treatment she received at TCI. However, there is no indication that the defendant acted without professional judgment. *See McGowak v. Hulick*, 612 F.3d 636, 641-42 (7th Cir. 2010). Disagreement with medical professionals about treatment needs does not state a cognizable Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976). *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Finally, the plaintiff claims that the defendant retaliated against her by taking away her Ultram and Celebrex after she complained about not getting a lower tier restriction. To prove retaliation, the plaintiff must show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future"; and (3) a causal connection between the two. *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). However, in this case the undisputed facts reveal that the defendant discontinued the Celebrex and Ultram because they were not on the DOC Formulary and also because, based on her assessment, they were not medically necessary. Moreover, a lower tier restriction was not necessary because the plaintiff's physical examination findings did not support a need for the restriction. The record is devoid of facts to support a finding of retaliation. "It is well settled that conclusory allegations . . . without support in the record, do not create a triable issue of fact." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002) (citing *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998)).

**Plaintiff's Motion for Voluntary Dismissal Without Prejudice**

After the defendant's motion for summary judgment was fully briefed, the plaintiff filed a motion for voluntary dismissal without prejudice. The defendant opposes dismissal without prejudice and instead requests that the court consider its dispositive motion and dismiss the case with prejudice.

In support of her motion, the plaintiff avers that she has been unable to obtain materials to prove her case or respond to the defendant's motion for summary judgment. She has contracted severe hives, most likely due to the stress of trying to litigate this case. The plaintiff does not feel she is able to prevail in this case while incarcerated and, therefore, she seeks dismissal without prejudice so that she may refile.

Federal Rule of Civil Procedure 41(a)(2) provides in relevant part: "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Permitting a plaintiff to voluntarily dismiss action without prejudice is within the discretion of the district court. *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 177 (7th Cir. 1994) (citing *FDIC v. Knostman*, 966 F.2d 1133, 1142 (7th Cir. 1992)). The court also has discretionary power to deny a plaintiff's request to voluntarily dismiss a claim without prejudice. *Id.* (citing *Kapoulas v. Williams Ins. Agency, Inc.*, 11 F.3d 1380, 1383 (7th Cir. 1993)).

In this case, the defendant filed her motion for summary judgment on November 5, 2010, and the motion was fully briefed on December 21, 2010.

Nonetheless, on January 24, 2011, the court granted the plaintiff's motion for a continuance and reopened discovery to allow her to conduct additional discovery and then file a supplemental response to the defendant's summary judgment motion by April 25, 2011. The plaintiff did not file a supplemental response, nor did she file a discovery related motion. Instead, on April 8, 2011, the plaintiff filed her motion to dismiss without prejudice indicating that she is unable to litigate this case while incarcerated. The court notes that while the plaintiff argues that she cannot prove her case due to her incarceration, she simultaneously contends that the defendant's motion for summary judgment proves her case. At this stage of the proceedings, the court finds that dismissing the case without prejudice would unduly prejudice the defendant. *See Jones v. Simek*, 193 F.3d 485, 491 (7th Cir. 1999). Accordingly,

**IT IS ORDERED** that the defendant's motion for summary judgment (Docket #28) be and the same is hereby **GRANTED**, and this action be and the same is hereby **DISMISSED** on the merits.

**IT IS FURTHER ORDERED** that the plaintiff's motion to dismiss without prejudice (Docket #54) be and the same is hereby **DENIED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of August, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge